IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EUGENE C. CANNON,

        Petitioner,

v.                                    Civil Action No. 5:08CV69
                                    (JUDGE STAMP)

KUMA J. DEBOO,[1]

        Respondent.

# **CORRECTED[2]**
# **REPORT AND RECOMMENDATION THAT**
# **PETITION UNDER 28 U.S.C § 2241 BE DENIED**

## **I. INTRODUCTION**

On March 7, 2008, the *pro se* petitioner, Eugene C. Cannon, an inmate at FCI Gilmer, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 seeking immediate release.[3] On March 11, 2008, petitioner paid the $5.00 filing fee.[4] Petitioner filed a Motion for Expedited Ruling on May 2, 2008.[5] Determining that summary dismissal of petitioner's § 2241 was not warranted, an Order to Show Cause was issued against the respondent on May 16, 2008.[6] In response to the Order to Show Cause, the respondent filed a Motion to Dismiss and

---

    [1]In the Style of various pleadings, the respondent's name has appeared as Dedoo and Deboo. The correct spelling is Deboo, and this Court will acknowledge the correct spelling.

    [2]The sole purpose of this Report and Recommendation is to make a specific recommendation on Docket No. 7, the Motion to Dismiss.

    [3]Docket No. 1

    [4]Docket No. 3

    [5]Docket No. 5

    [6]Docket No. 6

Response to Order to Show Cause[7], including a Memorandum in Support[8] on June 11, 2008. The Court sent petitioner a Roseboro Notice on June 12, 2008.[9]

On June 20, 2008, the respondent filed a Motion to Supplement Memorandum in Support of Response to Order to Show Cause and Motion to Dismiss.[10] By Order dated June 23, 2008, the Court granted respondent's Motion to Supplement.[11] With supplemental materials added to the record, this Court sent petitioner an Amended Roseboro Notice on June 23, 2008.[12] On July 2, 2008, petitioner filed a Reply to Respondent's Memorandum in Support of Response to Order to Show Cause and Motion to Dismiss.[13]

## II. FACTS

Petitioner was arrested by the State of Michigan on September 8, 2000 and was held in state custody on a variety of charges. (Doc. 13-9). Petitioner was sentenced on some state charges on February 7, 2001, and received credit for time served. (Doc. 13-5). Michigan retained custody over petitioner, pending resolution of other state charges. (Doc. 13-9).

Pursuant to a federal writ of habeas corpus *ad prosequendum*, petitioner was borrowed from the State of Michigan on July 26, 2001 to answer a federal charge of Conspiracy to Receive

---

[7]Docket No. 7

[8]Docket No. 8

[9]Docket No. 9

[10]Docket No. 13

[11]Docket No. 14

[12]Docket No. 16

[13]Docket No. 18

2

Stolen Mail Matter, in violation of Title 18, United States Code, Sections 371 and 1708. (Doc. 13-4) (Doc. 13-3). Petitioner was convicted, and on January 10, 2002, petitioner was sentenced in the United States District Court for the Eastern District of Michigan to thirty-months imprisonment. (Doc. 13-3). On January 15, 2002, petitioner was returned to state custody. (Doc. 13-4).

The State of Michigan sentenced petitioner on his remaining state charges on May 14, 2002. (Doc. 13-5). Petitioner was sentenced to a two-year term of imprisonment for Felony Firearms and a fifteen-year term of imprisonment for Armed Robbery. (Id.). Petitioner received 606 days of prior custody credit from Michigan on this sentence. (Doc. 13-10).

On May 17, 2002, the United States Marshals Service erroneously requested petitioner's designation to a federal facility. (Doc. 13-4, p. 1). Petitioner was subsequently designated to the United States Penitentiary (USP) Pollock on May 30, 2002. (Id. at p. 2). When the Bureau of Prisons discovered petitioner's erroneous designation, the United States Marshals Service removed petitioner from USP Pollock on February 5, 2003, and returned him to Michigan custody to finish serving the remainder of his state sentence. (Id.).

Until June 7, 2007, when Michigan authorities paroled petitioner, petitioner served the remainder of his Michigan sentence in state custody. (Doc. 13-5). The Bureau of Prisons calculated that petitioner's federal sentence commenced June 7, 2007. (Doc. 13-6). Petitioner's projected release date is August 11, 2009. (Id.).

### III. ISSUES PRESENTED

**A.     The Petition**

The petitioner asserts that the State of Michigan relinquished its primary jurisdiction over

3

him on May 17, 2002 or July 8, 2002, when the state allowed the United States Marshals Service to take petitioner without a writ and designate him to a United States Penitentiary. Petitioner also contends that the Bureau of Prisons made an implicit *nunc pro tunc* designation.

B.    **Motion to Dismiss/Response to Order to Show Cause**

The respondent argues that the petition should be dismissed because:

(1)    petitioner's federal sentence is consecutive to his state sentence;

(2)    petitioner's federal sentence commenced June 7, 2007;

(3)    petitioner is not entitled to prior custody credit under 18 U.S.C. § 3585(b); and

(4)    the State of Michigan did not relinquish primary jurisdiction over petitioner until June 7, 2007.

C.    **Petitioner's Reply**

Petitioner states that his petition should not be dismissed because:

(1)    the sentencing court had no reason to make a concurrent or consecutive recommendation;

(2)    district courts cannot order a sentence to be served consecutively to a yet to be imposed sentence;

(3)    this Court should follow Sixth Circuit case law;

(4)    the respondent's citation to unpublished opinions is generally prohibited;

(5)    a state can waive its primary jurisdiction; and

(6)    petitioner is not seeking prior custody credit, rather petitioner seeks a determination of when his federal sentence commenced.

## IV. STANDARD OF REVIEW

A.  **Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

## V. ANALYSIS

A.  **Whether Petitioner's Federal Sentence is Consecutive to His State Sentence**

Petitioner argues that his federal sentence was to be served concurrently with his later imposed state sentence. Petitioner notes that he was sentenced by the United States District Court for the Eastern District of Michigan on January 10, 2002 and that at the time of sentencing, petitioner had no undischarged state sentences.[14] Petitioner also notes that he was not sentenced by the State of Michigan until May 14, 2002. As a result petitioner concludes that his federal sentenced could not have commenced on June 7, 2007 because the federal sentence was imposed before his state sentence. To support his conclusion, petitioner urges this Court to follow United States v. Quintero, 157 F.3d 1038 (6th Cir. 1998) for the proposition that a district court cannot order a federal sentence to run consecutive to a yet to be imposed sentence.

Conversely, the respondent alleges that the petitioner's federal sentence was properly

---

[14]Petitioner was sentenced in federal court while on a writ of habeas corpus *ad prosequendum*. Petitioner was still in primary state custody, not because of a conviction, but because of pending state charges.

5

calculated as consecutive to petitioner's state sentence, because the sentencing judge was silent on the concurrent or consecutive nature of petitioner's federal sentence. The respondent directs the court to the statutory language of 18 U.S.C. § 3584(a) on the imposition of concurrent or consecutive terms, and to <u>United States v. Saunders</u>, 1998 WL 539482 (4th Cir. 1998) (finding that when a federal sentencing judge does not indicate whether a defendant is to serve his federal sentence consecutively or concurrently with a previously imposed state sentence, the default position is for the federal sentence to be served consecutively).

The Court finds that the instant case is distinguishable from the cases cited by the parties to this action. Respondent's reliance on <u>Saunders</u> is mistaken because there the prisoner had a previously imposed, yet undischarged state sentence. In the instant case, petitioner was in primary state custody awaiting final resolution of his state charges when he was federally sentenced. (Doc. 13-4) (Doc. 13-3). Petitioner's reliance on <u>Quintero</u> is mistaken because there the court found that the district court abused it's discretion in ordering that a federal sentence "be served consecutively to any sentence [not yet] imposed by the [s]tate. . ." 157 F.3d at 1039. Here, the sentencing judge did not make such an order. (Doc. 13-3). Furthermore, the Sixth Circuit clarified any doubt on <u>Quintero</u>'s application when it noted that "<u>Quintero</u> established that a district court cannot specify whether a sentence will run consecutively or concurrently to another sentence that has *not yet* been imposed; the case does not stand for the proposition that the sentences cannot run consecutively." <u>United States v. Custard</u>, 230 F.3d 1360, 2000 WL 1290338 at *2 (C.A.6 (Ky.)).

In light of the Sixth Circuit's distinction in <u>Custard</u> that a federal sentence can run consecutively to a later imposed state sentence, the Bureau of Prisons was not prohibited from

6

calculating petitioner's federal sentence as consecutive. Furthermore, the well established general rule that a sentence imposed by the sovereign with primary jurisdiction is served first favors a consecutive designation in petitioner's case because he was under the primary custody of Michigan during his federal sentencing (sentenced in federal court under a writ of habeas corpus *ad prosequendum*). See Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992)

Finally, Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment" by making a *nunc pro tunc* designation, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.")
However, the Bureau of Prisons denied a *nunc pro tunc* designation in petitioner's case. (Doc. 13-7). Specifically, the Bureau of Prisons declined to make such a designation because: 1) petitioner has an extensive criminal history, including armed robbery, thefts, felonious assault and possession of a stolen motor vehicle; 2) petitioner was found to be in possession of marijuana while serving a state sentence; 3) petitioner has assaulted two correctional officers; 3) a letter to the sentencing court asking if it wished to make a retroactive *nunc pro tunc* designation went unanswered;[15] and 4) petitioner's underlying state term was unrelated to his

---

[15]After the Bureau of Prisons denied a retroactive *nunc pro tunc* designation, Carol J. Cohron, Case Manager for the United States District Court for the Eastern District of Michigan, Southern Division, answered the Bureau of Prisons letter as follows:
> Judge Feikens has instructed me to respond to your letter of November 7, 2007 regarding [Eugene Cannon]. I have contacted Dan Hurley, the Assistant Untied

7

federal offense. (Id.).

Accordingly, this Court finds that the Bureau of Prisons accurately calculated petitioner's federal sentence as consecutive.

B. **Whether Petitioner's Federal Sentence Commenced on June 7, 2007**

Because petitioner did not receive a *nunc pro tunc* designation, Title 18, United States Code, Section 3585(a) provides the statutory basis for determining the commencement of petitioner's federal sentence. This provision provides that, "A sentence to a term of imprisonment commences on the date the defendant is received in custody, awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

The terms of incarceration that petitioner served prior to June 7, 2007, were all credited toward his state sentence (even the time he spent at USP Pollock). (Doc. 13-2) (Doc. 13-5) (Doc. 13-9) (Doc. 13-10). Because petitioner was paroled by Michigan to the United States Marshals on June 7, 2007 (Doc. 13-6) so that petitioner could begin serving his federal sentence, the Bureau of Prisons has accurately calculated petitioner's commencement date within the confines of 18 U.S.C. § 3585(a) as June 7, 2007.

C. **Whether Petitioner Is Entitled to Prior Custody Credit**

The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In

---

States Attorney assigned this case, and Julie Grews, the Probation Officer assigned this case and they and Judge Feikens believe that retroactive designation should be **DENIED**.
(emphasis in original) (Doc. 13-8).

making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, supra at 337. Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir, 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**). (emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

Here, petitioner was sentenced by the State of Michigan on February 7, 2001 to time served, (Doc. 13-5) and thus petitioner received credit on his state sentence from the date he was first arrested by the state on September 8, 2000 until February 7, 2001. Michigan continued to hold petitioner in custody, pending other state charges. (Doc. 13-9). On May 14, 2002, petitioner was sentenced by Michigan and received 606 days prior custody credit on that sentence. (Doc-13-10). From May 14, 2002 until June 7, 2007, petitioner was serving his state sentence. (Doc. 13-5) (Doc. 13-6). Because the petitioner cannot receive double credit, he is not entitled to any credit for this time against his federal sentence.

**D.      Whether the State of Michigan Relinquished Primary Jurisdiction Prior to June 7, 2007**

Petitioner argues that the State of Michigan relinquished its primary jurisdiction over him on either May 17, 2002, when the United States Marshals Service erroneously requested petitioner's designation to a federal facility, or on July 8, 2002, when petitioner arrived at United States Penitentiary (USP) Pollock.

This Court has not found a federal statute or case decided by the United States Court of Appeals for the Fourth Circuit that specifically addresses the instant circumstances.

There is some precedent that supports petitioner's theory that when a state prisoner is erroneously designated to a federal prison: (1) the state relinquishes jurisdiction over prisoner; (2) the federal sentence commences; and (3) the federal sentence cannot be tolled by affirmative acts to correct that erroneous designation. In Stephens v. Sabol, the Court reasoned that when the U.S. Marshals erroneously transferred a state prisoner to a federal facility, the Bureau of Prisons had every intent of commencing the prisoner's federal sentence under 3585(a) on the date of the transfer, and that but for the BOP recognizing the mistake, the prisoner would have continued to serve his sentence uninterrupted. Stephens v. Sabol, 539 F.Supp.2d 489, 495 (D.Mass. 2008). Furthermore, the Stephens Court reasoned that because the transfer was done without a writ of habeas corpus *ad prosequendum*, it constituted the state's affirmative act of relinquishment. Id. Therefore, the Stephens Court held that the federal sentence commenced on the day of transfer and proceeded uninterrupted. Id. at 499. Similarly, the Tenth Circuit has previously found that if a prisoner in state primary jurisdiction is not under a writ of habeas corpus *ad prosequendum* when delivered to federal authorities, the state relinquishes jurisdiction and federal authorities have exclusive jurisdiction, because a writ of habeas corpus *ad prosequendum* is used to ensure the retention of jurisdiction. Weekes v. Fleming, 301 F.3d

1175, 1180-1181 (10th Cir. 2002).

The District Court in Luther v. Vanyur analyzed the statutory language on the commencement and duration of a federal prisoner's sentence under 18 U.S.C. § 3585(a) to imply that a federal sentence begins on the date a prisoner is received in custody by the United States Marshal, awaiting transportation to prison, even if the prisoner is subsequently released to state custody and returned to federal custody. Luther v. Vanyur, 14 F.Supp.2d 773, 775-776 (E.D.N.C., 1997). Furthermore, the Luther Court held that a federal prison sentence continued to run, and was not interrupted, following the transfer of a prisoner to state custody to begin serving a state sentence until he was paroled by the state and returned to federal custody. Id. at 778-779.

Additionally, some circuits have found that an executive's accidental surrendering of primary jurisdiction should be held to a negligence standard. See United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988).

Conversely, there is precedent in other circuits which supports the respondent's theory that an erroneous designation does not cede jurisdiction over a prisoner.

The United States Supreme Court has held that as a general rule, the sovereign that first acquires custody of a defendant is entitled to custody until any sentence imposed is served. Ponzi v. Fessenden, 258 U.S. 254, 260 (1922).

The United States Court of Appeals for the Third Circuit, in it's decision of Allen v. Nash, reasoned that a state did not waive primary custody of defendant convicted of carjacking by erroneously designating defendant's custody to a federal facility. Allen v. Nash, 236 Fed.Appx. 779, 782-783 (3rd Cir. 2007). The Court also held that the state did not relinquish jurisdiction until it granted an appeal bond on state charges, such that defendant was properly denied credit

11

against his federal sentence for time served after his designation to a federal facility and prior to grant of appeal bond, especially given that such time was credited against defendant's state court sentence. Id. at 783.

In Stroble v. Conner, the Court rejected a prisoner's claim that erroneous placement in federal custody commenced his federal sentence. There, the Court found that because the period of incarceration was not extended by the error, the administrative error should not result in a "get out of jail early card." Stroble v. Conner, 2005 WL 2175161 (D. Kan. Sept. 8, 2005). Likewise, the Eighth Circuit has held that a prisoner is not entitled to time-served credit against a federal sentence for interruption of a federal sentence to complete a state sentence. Cox v. Federal Bureau of Prisons, 643 F.2d 534, 537 (8th Cir. 1981).

Finally, the United States Court of Appeals for the Fifth Circuit, noted that there is a common law rule that a prisoner is entitled to credit for time served when he is incarcerated discontinuously, through no fault of his own; nevertheless, the purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations. Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003). Accordingly, the Fifth Circuit reasoned that a prisoner's erroneous designation to a federal facility does not cede jurisdiction and there is no violation of the rule against piecemeal incarceration so long as a prisoner's total time of incarceration in both federal and state prisons "is not and will not be increased by even a single day." Id. at 555.

Because the Court finds no direct case on point decided by the Untied States Court of Appeals for the Fourth Circuit, the above review of contradictory case law has persuaded the Court to follow the holdings consistent with the notion that an erroneous designation does not

12

automatically cede jurisdiction. The Court makes this determination because this Court believes that a prisoner's time of incarceration should be governed by the sentence, not by administrative error.

Accordingly, Michigan was entitled to custody of petitioner when the United States Marshals Service erred in designating petitioner to a federal facility because Michigan was the sovereign to first acquire custody of defendant, and defendant had not discharged his state sentence. (Doc. 13-9). Michigan never relinquished primary jurisdiction when petitioner was erroneously designated to a federal facility, because when the error was discovered, petitioner was returned to a state facility (Doc. 13-4) and he received credit towards his state sentence for the period of time he spent at USP Pollock. (Doc. 13-2, p. 3) (Doc. 13-6). Therefore, petitioner's suggestion that he was prejudiced by the erroneous designation is without merit because petitioner received state credit for his time at a federal facility. (Id.).

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 7) be **GRANTED**, and the petitioner's § 2241 petition be **DENIED and DISMISSED WITH PREJUDICE**. Accordingly, petitioner's Motion for Expedited Ruling (Doc. 5) is **DENIED** as moot.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will

13

result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: January 26, 2009.

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE