```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

EUGENE C. CANNON,

     Petitioner,

v.                                    Civil Action No. 5:08CV69
                                                        (STAMP)
KUMA J. DEBOO,

     Respondent.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE,
AFFIRMING AND ADOPTING CORRECTED
REPORT AND RECOMMENDATION OF MAGISTRATE
JUDGE, DENYING MOTION FOR EXPEDITED DECISION
ON 28 U.S.C.A. § 2241, AND DENYING MOTION
FOR EXPEDITED RULING ON 28 U.S.C.A. § 2241**

I. Procedural History

The pro se[1] petitioner, Eugene C. Cannon, was sentenced by the United States District Court for the Eastern District of Michigan on January 10, 2002, to a thirty-month prison term for conspiracy to receive stolen mail matter, in violation of 18 U.S.C. §§ 371 and 1708. On March 7, 2008, the petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking immediate release. The respondent filed a combined response and motion to dismiss, to which the petitioner replied.

This matter was referred to United States Magistrate Judge James E. Seibert for a report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 83.09. The magistrate judge

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1237 (1999).

issued a report and recommendation recommending that the respondent's motion to dismiss be granted and that the petitioner's § 2241 petition be denied and dismissed with prejudice. The magistrate judge advised the parties that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party may file written objections to his proposed findings and recommendations within ten days after being served with a copy of the magistrate judge's recommendation.

The petitioner filed timely objections. Subsequently, he filed two motions for an expedited decision on his § 2241 petition.[2]

On January 26, 2009, Magistrate Judge entered a second report and recommendation for the sole and explicit purpose of articulating his recommendation that the respondent's motion to dismiss be granted. The report and recommendation advised the parties that any objections to it must be filed in writing within ten days after being served with a copy. Neither party filed objections.

Having reviewed the parties' pleadings, the relevant law, and the magistrate judge's reports and recommendations, this Court finds, for the reasons set forth below, that the reports and recommendations by the magistrate judge should be affirmed and adopted in their entirety, that the respondent's motion to dismiss

---

[2]The petitioner had previously filed a motion to expedite a ruling on his § 2441 petition, which Magistrate Judge Seibert denied as moot when he entered the report and recommendation recommending denial of the petitioner's § 2241.

should be granted, and that the petitioner's § 2241 petition should be denied and dismissed with prejudice. Further, this Court concludes that the petitioner's two remaining motions for an expedited ruling on his § 2241 must be denied as moot.

II. Facts

On September 8, 2000, the petitioner was arrested by the State of Michigan on a variety of charges. He was sentenced on some state charges on February 7, 2001, and he remained in state custody pending resolution of the remaining state charges brought against him. While he was in state custody, the federal government obtained a writ of habeas corpus ad prosequendum over the petitioner to enable him to answer the federal conspiracy charge described above. Pursuant to that writ, the federal government borrowed the petitioner from state custody on July 26, 2001. The petitioner then pled guilty to the federal charge. On January 10, 2002, the petitioner was sentenced to a thirty-month term of imprisonment. The petitioner was returned to state custody on January 15, 2002.

Approximately four months after returning to state custody, and pursuant to an agreement with state prosecutors, the petitioner pled nolo contendere to two remaining state charges. According to the petitioner, the agreement he negotiated with state authorities contained a provision that the petitioner's state sentences would run concurrently with his federal sentence. The petitioner was sentenced on May 14, 2002 in state court to two years of

imprisonment for a felony firearm offense, and to fifteen years of imprisonment for armed robbery. The state court judgment includes the following recommendation by the sentencing judge: "Per sentence agreement - Ct 2 runs consecutive to Ct 1 . . . . Sentence is concurrent w/federal sentence." (Pet'r's Ex. D.)

On May 17, 2002, the United States Marshals Service requested the petitioner's designation to a federal facility. No writ was issued for this purpose. The basis for the request, which the respondent contends was in error, does not appear in the record before this Court. Although state authorities do not appear to have protested the petitioner's designation to a federal facility without a writ, they also do not appear to have indicated to federal officials in any way that the petitioner had completed his state sentence, and the petitioner was remitted to federal authorities. On July 8, 2008, the petitioner was designated to United States Penitentiary ("USP") Pollock. Upon discovery by the Federal Bureau of Prisons ("BOP") that the petitioner had been erroneously designated to a federal facility, the United States Marshals Service removed the petitioner from federal detention and returned him to state custody on February 2, 2003, to complete the remainder of his state sentence. The petitioner received credit against his state sentence for the time he spent in federal custody from May 17, 2000 to February 5, 2003.

The petitioner remained in state custody until he was released on parole on June 7, 2007. At that time, the petitioner was designated to a federal facility.

The petitioner filed this action on March 7, 2008 seeking immediate release on the grounds that the state relinquished its primary jurisdiction when it released him to federal custody without a writ and, therefore, his federal sentence began on either May 17, 2002 (the date United States Marshals Service removed him from the state facility) or, alternately, on July 8, 2002 (the date the petitioner arrived at USP Pollock), and that the Federal Bureau of Prisons ("BOP") implicitly designated the Michigan Department of Corrections ("MDOC") as the place of Service for his federal sentence when the BOP transferred him to the MDOC via a state writ of habeas corpus or when the BOP sue sponte transferred him to MDOC even though MDOC had not rquested his custody. The respondent contends that the state did not release its primary jurisdiction and, therefore, the petitioner's federal sentence did not commence until July 7, 2007. The respondent further argues that the petitioner is not eligible for immediate release because his federal sentence is consecutive to his state sentence, and that he is not entitled to prior custody credit against his federal sentence.

### III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's

5

recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 458 F. Supp. 825 (E.D. Cal. 1979). Because the petitioner has filed objections, this Court will undertake a de novo review as to those portions of the report and recommendation to which objections were made.

## IV. Discussion

In his reports and recommendations, the magistrate judge identified four issues raised by the petitioner's claims: (1) whether the petitioner's federal sentence is consecutive to his state sentence; (2) whether the petitioner's federal sentence began on June 7, 2007; (3) whether the petitioner is entitled to prior custody credit; and (4) whether the State of Michigan relinquished primary jurisdiction prior to June 7, 2007. This Court addresses each issue in the order presented in the magistrate judge's reports and recommendations.

A. Relationship between Petitioner's State and Federal Sentences

The magistrate judge found that the petitioner's federal sentence was to be served consecutively to the state sentence. In his objections, the petitioner states that the magistrate judge has misunderstood the petitioner's claims and that he is not, in fact, asserting as a ground for habeas relief that his sentences were to be served concurrently. Rather, his contention, he states, is that

the state waived its primary jurisdiction that the petitioner's federal sentence began to run in 2002. Accordingly, this Court finds that the issue of consecutive versus concurrent sentences was not asserted by the petitioner, and to the extent that it may have been so asserted, it is deemed abandoned. In either event, the issue is not before this Court, and this Court does not consider it.

B.   Commencement of Petitioner's Federal Sentence

According to the petitioner, his federal sentence began on May 17, 2002--when he was transported by the United States Marshals Service to a federal detention facility--or, alternately, on July 8, 2002--when he was designated and delivered to USP Pollock. The petitioner argues that his transfer by federal authorities, without a writ, from state to federal custody constitutes the commencement of his federal sentence as dictated by 18 U.S.C. § 3585(a).

Magistrate Judge Seibert determined that the petitioner's federal sentence began on June 7, 2007, the date of the petitioner's release on parole from state custody. In reaching this conclusion, the magistrate judge reasoned that, because the petitioner's previous terms of incarceration served before June 7, 2007--including the period served at USP Pollock--had been credited toward the petitioner's state sentence, the petitioner's earlier transport to a federal facility did not commence the federal sentence. The magistrate judge reasoned that the start date of the petitioner's federal sentence was June 7, 2007 because the State of

7

Michigan did not deem the petitioner's state sentence completed until the state granted him parole on June 7, 2007, thereby enabling the petitioner to begin serving his federal sentence.

In his objections, the petitioner argues that the magistrate judge correctly identified § 3585(a) as the applicable provision for determining when a federal prisoner's sentence commences but that the magistrate judge failed to apply that provision in his analysis. Rather, the petitioner argues, the magistrate judge incorrectly applied § 3585(b), which governs the determination of credit awarded for prior custody. The petitioner contends, correctly, that under § 3585(a), the question to be answered here is whether the petitioner was "borrowed" from state custody when he was transported to a federal facility on May 17, 2002 or July 8, 2002. The petitioner believes that this question must be answered only by reference to § 3585(a), and that § 3585(b) has no applicability. This Court disagrees.

Section 3585 of Title 28 governs the calculation of a term of imprisonment and provides:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention *prior to the date the sentence commences–*
> > (1) as a result of the offense for which the sentence was imposed; or
> > (2) as a result of any other charge for which the defendant was arrested after the

> commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

28 U.S.C. § 3585 (emphasis added). The operation of § 3585(b) serves to inform the inquiry under § 3585(a). Stated differently, if a defendant receives credit under § 3585(b) for previous time served, a determination must necessarily have already been made that such previous time was served before the federal sentence commenced under § 3585(a) and that such time was not already credited against another sentence.

Here, state officials credited the petitioner with the time he served in federal detention before June 7, 2007. Because this fact rendered the petitioner ineligible to receive credit against his federal sentence, the question of whether the prior custody occurred before the federal sentence commenced is moot for purposes of analyzing whether the petitioner is eligible to receive credit for prior custody. However, the petitioner, in his objections, states that he is not seeking credit for time served. Rather, he says that he is seeking a determination of when his federal sentence began. This determination requires an answer to the predicate question of whether, as the petitioner asserts, the state relinquished its primary jurisdiction over the petitioner. The magistrate judge relied on the petitioner's ineligibility for prior custody credit--given that the time in federal custody had been credited against the state sentence--and on the petitioner's return by federal authorities to state custody once the BOP realized its

error in transferring the petitioner to federal custody to conclude that the federal sentence began when the state later released the petitioner on parole. Although the magistrate judge did not expressly state as much, his conclusion necessarily rested on his predicate determination that the state had retained primary jurisdiction, an issue analyzed in a later section of his report and recommendation.

As set forth more fully below, this Court also concludes that the state retained primary jurisdiction over the petitioner. Accordingly, the magistrate judge properly considered § 3585(b) in his analysis regarding determining when the petitioner's federal sentence commenced under § 3585(a). Therefore, this Court finds that the petitioner's objections concerning the magistrate judge's discussion of § 3585(b) considerations in his § 3585(a) analysis lack merit and will be overruled.

C. <u>Prior Custody Credit</u>

As discussed above, the magistrate judge concluded that pursuant to § 3585(b), the petitioner is not entitled to double credit for detention time and that, because the petitioner received state sentence credit for the time he spent in federal custody before June 7, 2007 (the date he was released on parole from state custody), he cannot receive credit against his federal sentence. In his objections, the petitioner argues that the magistrate judge has misinterpreted the petitioner's claim. The petitioner reiterates that he is seeking a determination that his federal

sentence began to run on either May 17, 2002 or July 8, 2002. He states that he not seeking any credit for time previously served. For the reasons discussed above, this Court rejects the petitioner's claim that his federal sentence commenced on either of the dates the petitioner proposes.

Moreover, to the extent that the petitioner's claim may be construed as seeking credit for time spent in federal custody, this Court agrees with the magistrate judge that the petitioner is not so entitled. Pursuant to 18 U.S.C. § 3585(b), a prisoner may not receive credit for prior custody against a federal sentence if the prisoner has already received credit for that time against another sentence. <u>See</u> 18 U.S.C. § 3585(b); <u>United States v. Wilson</u>, 503 U.S. 329 (1992). Here, the petitioner received prior custody credit on his state sentence for the time he spent in federal custody before June 7, 2007. Therefore, he may not be awarded additional credit against his federal sentence for that time.

D. <u>Relinquishment of Primary Jurisdiction</u>

The petitioner argues that the state relinquished its primary jurisdiction on May 17, 2002 when it allowed the United States Marshals Service to transfer the petitioner to a federal penitentiary without writ of habeas ad prosequendum, or, alternately, on July 8, 2002, when the petitioner arrived at USP Pollock. The magistrate judge, reviewing the case law and finding a split of authority, concluded that the state did not relinquish its primary jurisdiction, as evidenced by the return of the

11

petitioner to a state facility to serve the remainder of his term once BOP officials discovered the erroneous federal designation, and by the petitioner's receipt of custody credit against his state sentence for time the petitioner served in federal facilities between May 17, 2002 (the date the petitioner was removed from the state facility) and February 5, 2003 (the date he was returned to the state facility).

The petitioner objects to the magistrate judge's analysis and conclusion regarding the state's retention of primary jurisdiction. Upon de novo review of the record and the pertinent law, this Court concludes that the magistrate judge reached the correct conclusion. "Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). The general rule is that the sovereign which first arrests a defendant obtains primary jurisdiction for purposes of trial, sentencing, and imprisonment. Id. The sovereign with primary jurisdiction retains that jurisdiction until the sovereign acts affirmatively to relinquish it. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). Affirmative acts which operate to relinquish primary jurisdiction include releasing a defendant on parole, granting bail, or dismissing pending charges. See id. Additionally, a sovereign, acting through its executive, may elect to waive the

right to primary jurisdiction. Ponzi v. Fessenden, 258 U.S. 254 (1922).

According to the petitioner, the magistrate judge erred by failing to recognize the effect of the terms of the plea agreement the petitioner made with state authorities, which provided that the petitioner's state sentence would run concurrently with his federal sentence. In support of his argument, the petitioner relies upon a decision by the United States District Court for the District of Massachusetts in Stephens v. Sabol, 539 F. Supp. 2d 489 (D. Mass. 2008), and a decision by the United States District Court for the Northern District of New York in Shumate v. United States, 893 F. Supp. 137 (N.D.N.Y. 1995). These cases, according to the petitioner, stand for the proposition that his plea agreement with state authorities, together with the state's decision to allow federal authorities to remove the petitioner from state custody without a writ of habeas corpus ad prosequendum, constituted a waiver of the state's primary jurisdiction.

The petitioner's reliance is misplaced. Both Shumate and Stephens differ factually from this case. In Shumate, the petitioner, David L. Shumate ("Shumate") sought transfer from state custody to federal custody. Shumate, 893 F. Supp. at 138. The BOP refused to take custody of Shumate because he had been first arrested by state authorities, and because the state had not relinquished its primary jurisdiction by granting Shumate parole, granting him bail, or dismissing the charges against him. Id. at

142. Absent such relinquishment, the BOP believed, Shumate was required to serve his state sentence in state custody. Id. The United States District Court for the Northern District of New York determined that the State of New York had effectively relinquished its priority of jurisdiction before the district court had imposed the federal sentence and that, therefore, the BOP had authority to transfer Shumate to federal custody. Id. at 142-43. As the basis for this conclusion, the court identified several considerations. First, Shumate had negotiated coordinated plea agreements with the federal and state authorities. The plea agreements provided that, with permission of the respective courts, Shumate would serve his state and federal sentences concurrently; that he would complete his federal sentence first, and then be transferred to a state facility to serve the remainder of his state term, if any; and that the federal sentence would be served in a federal facility. Id. at 139. Second, the State of New York, through the Schenectady County District Attorney, executed a written "Waiver of Primary Jurisdiction," addressed to the Assistant United States Attorney. Id. at 139. The waiver stated, in pertinent part:

> "After intensive negotiating involving all parties in the above-captioned case which is currently pending in the federal system and in Schenectady County Court, please be advised that it is our determination that we will relinquish any priority of jurisdiction in the person of David L. Shumate to federal authorities.
> \* \* \*
> "The purpose of this letter is also to confirm our understanding that based upon our relinquishment of priority of jurisdiction, Mr. Shumate will serve his sentence federally. If there is any time to be served on

>     the state sentence, it would be served after the
>     conclusion of the federal sentence."

Id. at 139-40 (quoting Pet'r's Notice of Mot. Ex. C). The district court found that this waiver, "[b]y its plain terms . . . fully and unconditionally yields New York State's primacy of jurisdiction to the United States." Id. at 140.

Second, when imposing sentences on the Shumate petitioner, the federal and state courts were "mindful of the sentences imposed or to be imposed by the other sovereign." Id. at 139. Based upon the coordinated plea agreement, and the state's waiver of primary jurisdiction, the district court imposed a sentence of 204 months of imprisonment, which the court "intended [Shumate to] serve at a federal facility concurrently with his forthcoming state sentence." Id. at 140. Similarly, the state court thereafter "expressly imposed [Shumate's] sentence to run concurrent with the earlier imposed federal sentence." Id. Indeed, the state court then remanded Shumate to the custody of federal authorities. Subsequently, Shumate was committed to state custody. Id. Based upon the particular facts before it, the district court concluded that the State of New York had relinquished primary jurisdiction.

Quoting out of context one sentence from the Shumate decision, the petitioner here argues that the same result should follow in this action. Specifically, the petitioner quotes the following language from Shumate in support of his argument that the State of Michigan relinquished its priority of jurisdiction: "By its plain terms the waiver fully and unconditionally yields New York State's

15

primacy of jurisdiction to the United States." Id. at 140.  The petitioner claims that because the agreement he negotiated with state authorities contained a provision that his state sentence would run concurrently with his federal sentence and that his state sentence so provided, this Court should conclude that the state relinquished its primary jurisdiction.

However, this argument contains a number of deficiencies. First, nothing on the record before this Court indicates that either the state or the federal plea agreement contained a provision addressing the state's primary jurisdiction.  Indeed, the petitioner does not even allege that the issue of primary jurisdiction was the subject of his negotiations in either plea agreement.  Second, the petitioner does not show, nor does he allege, that he entered his guilty plea in federal court as a result of any coordinated plea agreement with federal and state prosecutors which contained any provision concerning the concurrent running of state and federal sentences.  Finally, nothing on the record remotely suggests that the state intended the plea agreement to serve as waiver of its primary jurisdiction.  These facts differ materially from those in Shumate.  Accordingly, this Court does not find Shumate persuasive authority in this action.

Similarly, given the facts of this action, this Court is not persuaded by the decision of the District of Massachusetts in Stephens v. Sabol, 539 F. Supp. 2d 489 (D. Mass. 2008).  There, the petitioner, Vincent Stephens ("Stephens"), like the petitioner in

16

this action, sought a determination that his federal sentence commenced when he was transferred to federal authorities even though the transfer was erroneously undertaken. Stephens had been sentenced in federal court to eight years of imprisonment for a federal carjacking offense. The federal judgment was silent regarding any pending state charges or any future state sentences which might be imposed. Stephens was subsequently sentenced in state court on multiple counts under state law. He then moved to vacate his state sentence. That motion was granted, and his case was set for resentencing. According to the district court, jail officials for the state were "[a]pparently unaware that Stephens was to be resentenced" because they informed the Marshals that Stephens had completed his state sentence and that the Marshals should execute the federal detainer lodged pursuant to hie federal judgment and commitment order. Id. at 491.

In response, the Marshals transported Stephens to a federal facility. Approximately two months later, the BOP realized that Stephens had not, in fact, completed his state sentence. Therefore, Stephens was returned to state custody.

On these facts, the court determined that Stephens' federal sentence commenced when Stephens was remitted to the Marshals. In reaching this conclusion, the court found that the state had relinquished its primary jurisdiction by informing federal authorities that Stephens' state sentence had expired and by transferring him to federal authorities.

17

In Stephens, the Marshals transported the prisoner to federal custody for the purpose of beginning his federal sentence because state officials had erroneously informed the Marshals that he had completed his state sentence. By contrast, in this action, the State of Michigan erroneously remitted the petitioner to federal authorities without a writ, but nothing on the record demonstrates, or even suggests, that state officials indicated to federal authorities that the petitioner had completed his state sentence. Given this important distinction, this Court finds that the affirmative act relinquishing primary jurisdiction which the district court found present in Stephens is absent in this case. Therefore, on the facts before it, this Court finds Stephens unpersuasive.

This Court agrees with the magistrate judge that, under the facts of this case, the State of Michigan did not relinquish its primary jurisdiction until June 7, 2007, when it released the petitioner on parole. Because the federal designation in 2002 was in error, it did not operate to commence the petitioner's federal sentence. See e.g., Allen v. Nash, 236 Fed. Appx. 779, 783 (3d Cir. 2007) (unpublished). For the same reason, this Court finds that the BOP did not implicitly designate the Michigan Department of Corrections as the location where the petitioner was to serve his federal sentence.

Moreover, the record fails to establish that the state took any affirmative action, either before or after the petitioner's

18

transfer to federal custody, to indicate that it had relinquished its primary jurisdiction. See Weekes v. Fleming, 301 F.3d 1175, 1181-82 (10th Cir. 2002) (subsequent acts by federal and state sovereigns, including use of an ad prosequendum writ by state to regain custody of prisoner for probation violation hearing, affirmatively show that State of Idaho relinquished it primary jurisdiction).[3] In light of the foregoing, this Court concludes that the state's primary jurisdiction over the petitioner did not terminate until June 7, 2007.

## V. Conclusion

Based upon a de novo review, this Court finds that the reports and recommendations of the magistrate judge should be, and are hereby AFFIRMED and ADOPTED in their entirety. Accordingly, for the reasons set forth above, the respondent's motion to dismiss is GRANTED. Furthermore, the petitioner's § 2241 petition is DENIED and DISMISSED WITH PREJUDICE. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the petitioner choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit

---

[3]Exhibit E to the petitioner's petition, United States Department of Justice Inmate Activity Record (BP-S381.058 May 1994), does indicate that the petitioner was transferred on July 23, 2002, pursuant to a state writ, but the record provides no additional information about the writ, such as its purpose, nor does the record anywhere identify the state which issued the writ. Therefore, this Court is unable to conclude that the State of Michigan took an affirmative act after the petitioner was transferred to federal authorities to relinquish its primary custody.

on issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within thirty days after the date that the judgment order in this case is entered.  <u>See</u> Fed. R. App. P. 4(a)(1).  He is further advised that a certificate of appealability is not required for a federal prisoner proceeding under 28 U.S.C. § 2241.  <u>See</u> 28 U.S.C. § 2253(c) (certificate of appealability is required in a § 2255 proceeding or in a habeas corpus proceeding in which the detention complained of arises from process issued by a State court); <u>see also</u> Fed. R. App. P. 22; <u>Drax v. Reno</u>, 338 F.3d 98, 106 n.12 (2d Cir. 2003).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this order to the <u>pro se</u> petitioner by certified mail and to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 13, 2009

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE